JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Charles Angelkina, as Personal Reprsentative of the Estate of Charles A. Angelina, Deceased

**DEFENDANTS**
The United States of America (Federal Aviation Administration)

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Cynthia Devers, Esq. The Wolk Law Firm (215) 545-4220

Attorneys (If Known)
Alan D. Mattioni, Esq.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☒ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Sec. 1331

Brief description of cause:
Airplane accident

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE   Honorable Barclay Surrick

DOCKET NUMBER   2:10-cv-02895-RBS

DATE
06/24/2010

SIGNATURE OF ATTORNEY OF RECORD
*Cynthia D. Wers*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 820 Cross St., Phila, PA 19147

Address of Defendant: 800 Independence Ave., S.W., Suite 912, ACG-400, Washington, DC 20591

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*
Case Number: 10cv02895   Judge: Barclay Surrick   Date Terminated: N/A (pending)

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☒   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) FTCA

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Cynthia Devers, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 6/24/2010   Cynthia Devers   209144
                   Attorney-at-Law   Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/24/2010   Cynthia Devers   209144
                  Attorney-at-Law   Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Charles Angelina and Virginia Angelina | : | CIVIL ACTION |
| | : | |
| v. | : | |
| United States of America Federal Aviation | : | |
| Administration | : | NO.  10-CV-02895 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     (x )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| | | |
|---|---|---|
| _6/24/2010_ | _Cynthia Devers_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-4220 | (215) 545-4242 | cdevers@airlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ANGELINA and VIRGINIA ANGELINA, Individually and as Personal Representatives of the Estate of Charles Anthony Angelina, Deceased<br>820 Cross Street<br>Philadelphia, PA 19147 | : : : : : : : | |
| Plaintiffs, | : : | Case No. 2:10-cv-02895-RBS |
| v. | : : | |
| UNITED STATES OF AMERICA FEDERAL AVIATION ADMINISTRATION 800 Independence Avenue, S.W. Suite 912, AGC-400 Washington, DC  20591 | : : : : : | |

## CIVIL ACTION COMPLAINT

### THE PARTIES

1.      Plaintiffs, Charles Angelina and Virginia Angelina, are citizens of the Commonwealth of Pennsylvania, residing in the Eastern District of Pennsylvania, and are the duly appointed Personal Representatives of the Estate of Charles Anthony Angelina, who died in an aircraft accident on May 22, 2008.

2.      Defendant, United States of America, is a body politic which, for purposes of this litigation, operates through its executive branch an agency of government known as the Federal Aviation Administration ("FAA"), charged with responsibility under the Federal Aviation Act of 1958, as amended, to ensure the safety of flight, and in which control of all airspace over the United States is vested.

**JURISDICTION**

3.      This action arises under 28 U.S.C. § 2671 et seq., known as the Federal Tort Claims Act (FTCA).

4.      Plaintiffs have complied with all administrative prerequisites to the institution of suit under the FTCA.

5.      Specifically, the airplane accident which gave rise to Charles Anthony Angelina's death and Plaintiffs' damages occurred on May 22, 2008, and the Angelina Plaintiffs presented their administrative, Standard Form 95 claim to the FAA by Federal Express on September 24, 2009, which was stamped "received" by the FAA of September 29, 2009. On June 17, 2010, the FAA sent Plaintiffs notice of its denial of claim. This action is timely filed within six (6) months of the date of mailing of said notification.

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this case arises under the FTCA, a federal statute, and pursuant to 28 U.S.C. § 1346(b) in that the District Court has original jurisdiction of all claims against the UNITED STATES OF AMERICA and against the various agencies thereof, including the Federal Aviation Administration (FAA).

**VENUE**

7.      The United States District Court for the Eastern District of Pennsylvania is the appropriate venue pursuant to 28 U.S.C. § 1402(b) in that Plaintiffs are residents of that district. This District is also an appropriate in which to pursue this action under 28 U.S.C. § 1391 in that some or all of the events, acts, or omissions giving rise o this case of action occurred here.

**BACKGROUND**

8.     On May 22, 2008, Plaintiffs' decedent, Charles Anthony Angelina, was taking flight lessons aboard a Grumman American Trainer, N9555U, with his flight instructor, Adam Braddock.

9.     On this particular day, Charles Angelina was practicing "touch and go landings" on Runway 33 at the Northeast Philadelphia Airport (PNE). During this maneuver, the aircraft lands on a runway and takes off again without coming to a full stop. The pilot then enters into the traffic pattern, circles the airport, contacts the Air Traffic Control Tower for clearance, and repeats the process. This procedure is used by flight schools to allow student pilots to practice multiple landings in a short period.

10.     Charles Angelina and Adam Braddock contacted the Tower and requested clearance to practice touch and go landings, which was granted. The Tower advised them to report left downwind on each go around, which they did several times.

11.     On the last go-around, Charles Angelina and Adam Braddock departed the end of Runway 33 and were about to enter into the traffic pattern, when the Controller abruptly switched traffic patterns from left to right, and they followed the Controller's instruction.

12.     Unbeknownst to Charles Angelina and Adam Braddock, just moments before their departure, the Controller allowed a large Agusta helicopter to cross over the end of Runway 33 and worse, to hover there, sending off invisible wake vortices that are deadly for any aircraft in their path. The Controller knew, or should have known, that the large Agusta helicopter generates significant wake turbulence, and yet sent Charles Angelina and Adam Braddock directly into harm's way.

13.    Under the direction of the Controller, Charles Angelina and Adam Braddock followed a right traffic pattern, putting them directly into the helicopter's invisible wake vortices, which caused the aircraft to depart controlled flight and to crash into a nearby parking lot. The aircraft caught on fire, and Charles Angelina was killed as a result of smoke and inhalation injuries. Adam Braddock also died in this crash.

14.    This accident could have been avoided had the Air Traffic Controllers not violated their instruction, Handbook, and manuals, or exercised due care in this situation. The Controllers had a duty to provide specific air traffic services, and failed to meet those duties, as set forth in detail below.

15.    Upon information and belief, the Air Traffic Controllers were fully aware that Agusta is located mid-field, and the extreme danger that helicopter wake turbulence, particularly for large helicopters, can impart on small general aviation aircraft. The Controllers were aware that a helicopter departure can be made from any direction from the factory and need not be made on the duty runway or anywhere near it, so as to cause the risk of wake turbulence. The Controllers were also aware of the myriad of training schools at the airport, with aircraft making touch and go landings all day long with inexperienced pilots aboard.

16.    In the face of this knowledge, the accident occurred without a required wake turbulence caution, without a suggestion to abandon the touch and go mid-field, a suggestion to the helicopter pilot to depart other than through the duty runway traffic pattern, an admonishment to move out of the way because the helicopter was creating wake turbulence, or any other step consistent with maintaining safety.

17.    Upon information of belief, the Controllers knew that they sent Charles Angelina and Adam Braddock directly into harm's way. The FAA Employees hindered the

investigation and destroyed the radar data that confirmed that they were culpable. However, the United States military did retain the radar data, which proves that the Controllers directed the Grumman into the wake vortices of the helicopter and caused this accident.

## DAMAGES CLAIMED

18.    Charles and Virginia Angelina, as Co-Administrators of the Estate of Charles Anthony Angelina, bring this action on behalf of decedent's Estate and the statutory beneficiaries of the Estate, and demand recovery under the applicable Survival Act, for all recoverable damages, including but not limited to, loss of net accumulations, loss of lifetime earnings, pecuniary losses, loss of life's pleasures, pain and suffering, and fear of impending death, as well as funeral memorial and administrative expenses.

19.    Additionally, by reason of his death, the family of Charles Anthony Angelina, his father Charles Angelina, and his mother Virginia Angelina, have suffered the loss of his care, comfort, companionship, guidance, tutelage, financial contributions, and they, together with his Estate, have suffered and demand recovery for all those damages recoverable under applicable wrongful death law, including but not limited to, loss of pecuniary benefits, loss of contributions for support, loss of household services, loss of society and comfort, funeral expenses, and mental anguish.

20.    Claimants also make a claim for fraudulent concealment, spoliation of evidence, obstruction of justice, and the unconstitutional interference with Due Process under the law.

## COUNT I

### NEGLIGENCE

21.    Plaintiffs incorporate by reference Paragraphs 1 through 20 as though set forth at length herein.

22.    The Defendant, United States of America, through its agency, the FAA, provided air traffic control (ATC), communications, and radar track data for the accident aircraft and the accident flight.

23.    At all times material hereto, Defendant owed a duty of care to Plaintiffs' Decedent to use reasonable care in connection with providing ATC services and a duty to use reasonable case in connection with the performance of its air traffic control and tower operator duties and responsibilities.

24.    It was foreseeable that the acts or omissions of Defendant would create an unreasonable risk of harm and injury to Plaintiffs' Decedent.

25.    The FAA is responsible to provide pilots with relevant information, services, and safety information to assist in the safety of flight and the prevention of accidents.

26.    Despite this responsibility, Defendant breached its duties and responsibilities with respect to the services provided to the accident aircraft and the pilots aboard the accident aircraft.

27.    The FAA employee Controllers had a duty to provide specific air traffic services, including but not limited to, their duties under FAA Order 7110.65 (relevant portions attached at Exhibit A), the FAA Handbook, and other orders and guidelines, including the following:

a.   issuing cautionary information to any aircraft if wake turbulence may have an adverse effect on it;

b.   issuing cautionary information to any aircraft if wake turbulence may have an adverse effect on it, using the word "heavy" in the description when traffic is known to be a heavy aircraft;

c.   providing airport traffic control service based upon observed or known traffic and airport conditions;

d.   providing traffic information;

e.   controlling the use of active runways;

d.   describing vehicles, equipment, or personnel on or near the movement area in a manner which will assist pilots in recognizing them;

e.   describing the relative position of traffic in an easy to understand manner;

f.   establishing the sequence of arriving and departing aircraft by requiring them to adjust flight or ground operation, as necessary, to achieve proper spacing;

g.   prohibiting other traffic to pass in front of the Grumman, which was conducing touch-and-go landings;

h.   complying with the requirements of the Air Traffic Control Handbook, manuals, orders, directives, and/or other guidelines;

i.   monitoring flights and airport conditions;

j.   directing air traffic;

k.   providing traffic separation;

l.   providing timely warnings of conflicting traffic; and

-7-

   m. exercising their best judgment if they encounter situations not covered by prescribed ATC procedures and phraseology for use by persons providing ATC services.

   28. The negligence of the FAA employee controllers, in breach of the above stated duties, consisted of:

   a. failing to issue cautionary information to N9555U that the wake turbulence from the large Agusta helicopter may have an adverse effect on it;

   b. failing to issue cautionary information to N9555U using the word "heavy" that the wake turbulence from the Agusta may have an adverse effect on it, despite knowing that the Agusta helicopter was a heavy aircraft;

   c. failing to advise N9555U to abandon the touch-and-go mid-field to merge into the right traffic pattern;

   d. failing advise the Agusta helicopter to depart from another point, rather than through the active runway traffic pattern;

   e. allowing the Agusta helicopter to depart the active runway and/or pass directly in front of N9555U;

   f providing preferential treatment and services to the Agusta helicopter;

   g. failing to control the active runway;

   h. failing to warn N9555U to alter its course to avoid the Agusta helicopter's wake turbulence;

i.    failing to issue a wake turbulence caution advisory or other cautionary information to N9555U since the Agusta helicopter would have, and did have an adverse affect on it;

j.    failing to issue any actions or warnings consistent with maintaining the safety of flight;

k.    failing to warn N9555U of the impending wake turbulence or vortices caused or to be caused by the Agusta helicopter;

l.    failing to providing airport traffic control service based upon observed or known traffic and airport conditions;

m.    failing to provide N9555U with adequate traffic information;

n.    failing to describe the presence of the Agusta helicopter on or near the movement area in a manner which would have assisted N9555U;

o.    failing to describe the relative position of traffic in an easy to understand manner;

p.    failing to establish the sequence of arriving and departing aircraft by requiring them to adjust flight or ground operation, as necessary, to achieve proper spacing;

q.    failing to prohibit the Agusta helicopter from passing in front of N9555U, which was conducting touch and go landings;

r.    failing to exercise their best judgment in this situation;

s.    failing to comply with the requirements of the Air Traffic Control Handbook, manuals, guidelines, orders, directives and recommendations, or other guidelines governing the activities of and performance of duties by tower personnel;

t.      failing to comply with the Air Traffic Control Handbook, manuals, guidelines, orders, directives and recommendations, or other guidelines, including FAA Order 7110.65 and/or other FAA orders pertaining to helicopter departures and/or creation of wake turbulence;

u.      failing to properly monitor the accident flight;

v.      failing to provide timely warnings of conflicting traffic; and

w.      negligently providing air traffic control services to N9555U and/or the Agusta helicopter;

x.      failing to comply with the procedures established by the FAA with regard to handling aircraft under the circumstances presented here;

y.      failing to provide services and actions required under the ATC Handbook and relevant publications, including but not limited to failing to exercise their best judgment under the circumstances presented here;

z.      failing to issue traffic information and/or appropriate instructions to the Agusta helicopter to ensure that it remained well-clear of the accident aircraft on departure;

aa.     failing to issue control instructions to the pilot of the Agusta helicopter to avoid causing a hazard to N9555U;

bb.     failing to advise N9555U of the location and route of the Agusta helicopter;

cc.     failing to properly consider N9555U as a departing aircraft;

dd.     improperly allowing the Agusta helicopter to depart ahead of and in front of N9555U;

ee.     failing to provide the required additional duties needed to be performed by Air Traffic Controllers under the circumstances;

ff.     creating a deadly and dangerous condition by inadequately, inappropriately and/or unsafely performing ATC duties and responsibilities;

gg.     otherwise violating the laws of the United States of America and the orders and mandates of the FAA relating to air traffic control towers;

hh.     such other acts of negligence as will appear during the course of discovery.

29.     As a result of the foregoing negligence of the FAA employee Controllers, the pilots of the accident aircraft did not receive any warnings, communications, or monitoring, and instead directed Charles Anthony Angelina and his flight instructor into the wake vortices of the Agusta helicopter, which resulted in the fatal accident which took the lives of Plaintiffs' decedent.

WHEREFORE, each Plaintiff demands judgment against the defendant in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus attorney's fees, costs, and interest as provided by law.

## COUNT II

### SPOLIATION OF EVIDENCE, OBSTRUCTION OF JUSTICE, AND UNCONSTITUTIONAL VIOLATION OF DUE PROCESS

30     Plaintiffs incorporate by reference paragraphs 1 through 29 as though set forth at length herein.

31.     The FAA is the federal agency lodged with the duties to assure the safety in aviation and the safe use of our nation's airspace. The FAA, as an agency of the United States

government, has the duty to honor and protect the rights of American citizens, especially those, such as Plaintiffs, who are among the class of citizens to whom the FAA exists to protect.

32.     The radar data was in the control of the FAA, its employee controllers and their supervisors. The FAA had a duty to use reasonable care to preserve, protect, and retain all pertinent data generated for the accident flight.

33.     Rather than preserve the radar information that was recorded on the date of the accident, upon information and belief, the FAA employees in their own interests to protect themselves against litigation, maliciously and intentionally destroyed evidence, which they knew the personal representatives of the decedents' estates would rely upon to pursue their legal rights and remedies which are preserved under the Federal Tort Claims Act.

34.     The FAA, its employee controllers, and their supervisors should have recognized the importance that the radar data bears on an issue in this litigation, including how their negligence contributed to this fatal accident. Rather than preserving valuable evidence in light of an airplane accident, which fatally injured two young men, the FAA, its employee controllers, and their supervisors, upon information and belief, disposed of the radar data before Plaintiffs had an opportunity to inspect it.

35.     The FAA employees' destruction of evidence was done in the course and scope of their employment with the FAA and in the capacity as an actor of the Federal Government. It is repugnant to the administration of justice and the rights of Plaintiffs' decedents and their surviving family members that the FAA would engage in tortious conduct to conceal its own negligence and reckless conduct giving rise to this accident.

36.     The FAA's obstruction of justice and intentional destruction of the radar data is a violation of Plaintiffs' rights to Due Process under the State and Federal Constitutions.

37.     The FAA, its employee controllers, and/or their supervisors, disposed of the radar data to conceal its reckless, negligent, and wrongful conduct from the public, Plaintiffs, and potential litigants.

38.     Defendant is liable to Plaintiffs for fraudulent concealment, spoliation of evidence, obstruction of justice, and/or unconstitutional violation of Due Process in that:

a.     Defendant had a legal obligation to disclose or preserve evidence (ie. the relevant radar data);

b.     the evidence is material to the litigation;

c.     Plaintiffs could not reasonably have obtained access to all of the available evidence from another source;

d.     Defendant intentionally and/or negligently withheld, alerted, or destroyed the evidence with the purpose of disrupting or precluding Plaintiffs' litigation and/or to protect their own self-interests and conceal their negligent acts or omissions in causing the accident;

e.     Plaintiffs have been or likely will or may be damaged in the underlying litigation by having to rely on an evidential record that does not contain all of the necessary and/or available evidence to prevail;

f.     Defendant is liable to Plaintiffs under the Restatement (Second) of Torts §550 and/or §870 or by virtue of committing the tort of fraudulent concealment and/or spoliation of evidence;

g.     Plaintiffs need the radar data to introduce at trial and to use as the basis for expert and/or other witness testimony in order to prove that the crash of N9555U was caused by the acts or omissions of Defendant;

h.    The breach by Defendant proximately caused the destruction or spoliation of the evidence and, may have proximately caused Plaintiffs to be denied the reasonable probability of success as their cause of actions, but for Defendants' destruction or spoliation of this evidence.

39.    Plaintiffs have been able to obtain certain radar data from the United States Military, which proves the acts or omissions of Defendant caused and/or contributed to this accident.

40.    Under the circumstances here, Defendant should be precluded from arguing or asserting that the radar data available to Plaintiffs from the United States Military is in anyway deficient or lacking, and the trier of fact should be so instructed of Defendant's misconduct with respect to the destruction and/or concealment of vital and critical evidence.

WHEREFORE, each Plaintiff demands judgment against the defendant in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus attorney's fees, costs, and interest as provided by law.

Dated:  June 24, 2010

Cynthia Devers, Esquire
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103
(215) 545-4220
Fax: (215) 545-5252
cdevers@airlaw.com

*Attorney for Plaintiffs*

# Exhibit "A"



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
Air Traffic Organization Policy

**ORDER**
**JO 7110.65T**
Effective Date:
February 11, 2010

Subject: **Air Traffic Control**

# Chapter 2. General Control

## Section 1. General

### 2-1-1. ATC SERVICE

The primary purpose of the ATC system is to prevent a collision between aircraft operating in the system and to organize and expedite the flow of traffic, and to provide support for National Security and Homeland Defense. In addition to its primary function, the ATC system has the capability to provide (with certain limitations) additional services. The ability to provide additional services is limited by many factors, such as the volume of traffic, frequency congestion, quality of radar, controller workload, higher priority duties, and the pure physical inability to scan and detect those situations that fall in this category. It is recognized that these services cannot be provided in cases in which the provision of services is precluded by the above factors. Consistent with the aforementioned conditions, controllers shall provide additional service procedures to the extent permitted by higher priority duties and other circumstances. The provision of additional services is not optional on the part of the controller but rather is required when the work situation permits. Provide air traffic control service in accordance with the procedures and minima in this order except when:

**a.** A deviation is necessary to conform with ICAO Documents, National Rules of the Air, or special agreements where the U.S. provides air traffic control service in airspace outside the U.S. and its possessions or:

**NOTE-**
*Pilots are required to abide by CFRs or other applicable regulations regardless of the application of any procedure or minima in this order.*

**b.** Other procedures/minima are prescribed in a letter of agreement, FAA directive, or a military document, or:

**NOTE-**

*These procedures may include altitude reservations, air refueling, fighter interceptor operations, law enforcement, etc.*

**REFERENCE-**
FAAO JO 7110.65, Para *1-1-9*, Procedural Letters of Agreement.

**c.** A deviation is necessary to assist an aircraft when an emergency has been declared.

**REFERENCE-**
FAAO JO 7110.65, Para *2-1-6*, Safety Alert.
FAAO JO 7110.65, *Chapter 10*, Emergencies.
FAAO JO 7110.65, Para *5-1-8*, Merging Target Procedures.

## 2-1-2. DUTY PRIORITY

**a.** Give first priority to separating aircraft and issuing safety alerts as required in this order Good judgment shall be used in prioritizing all other provisions of this order based on the requirements of the situation at hand.

**REFERENCE-**
FAAO JO 7110.65, Para *2-1-6*, Safety Alert.

**NOTE-**
*Because there are many variables involved, it is virtually impossible to develop a standard lis of duty priorities that would apply uniformly to every conceivable situation. Each set o circumstances must be evaluated on its own merit, and when more than one action is required controllers shall exercise their best judgment based on the facts and circumstances known to them. That action which is most critical from a safety standpoint is performed first.*

**b.** Provide support to national security and homeland defense activities to include, but not be limited to, reporting of suspicious and/or unusual aircraft/pilot activities.

**REFERENCE-**
FAAO JO 7610.4, Special Operations.

**c.** Provide additional services to the extent possible, contingent only upon higher priority duties and other factors including limitations of radar, volume of traffic, frequency congestion, and workload.

## 2-1-3. PROCEDURAL PREFERENCE

**a.** Use automation procedures in preference to nonautomation procedures when workload communications, and equipment capabilities permit.

**b.** Use radar separation in preference to nonradar separation when it will be to an operationa advantage and workload, communications, and equipment permit.

**c.** Use nonradar separation in preference to radar separation when the situation dictates that an operational advantage will be gained.

**NOTE-**
*One situation may be where vertical separation would preclude excessive vectoring.*

## 2-1-4. OPERATIONAL PRIORITY

Provide air traffic control service to aircraft on a "first come, first served" basis as circumstances permit, except the following:

**NOTE-**
*It is solely the pilot's prerogative to cancel an IFR flight plan. However, a pilot's retention of an IFR flight plan does not afford priority over VFR aircraft. For example, this does not preclude the requirement for the pilot of an arriving IFR aircraft to adjust his/her flight path, as necessary, to enter a traffic pattern in sequence with arriving VFR aircraft.*

**a.** An aircraft in distress has the right of way over all other air traffic.

**REFERENCE-**
*14 CFR Section 91.113(c).*

**b.** Provide priority to civilian air ambulance flights "LIFEGUARD." Air carrier/taxi usage of the "LIFEGUARD" call sign, indicates that operational priority is requested. When verbally requested, provide priority to military air evacuation flights (AIR EVAC, MED EVAC) and scheduled air carrier/air taxi flights. Assist the pilots of air ambulance/evacuation aircraft to avoid areas of significant weather and turbulent conditions. When requested by a pilot, provide notifications to expedite ground handling of patients, vital organs, or urgently needed medical materials.

**NOTE-**
*It is recognized that heavy traffic flow may affect the controller's ability to provide priority handling. However, without compromising safety, good judgment shall be used in each situation to facilitate the most expeditious movement of a lifeguard aircraft.*

**c.** Provide maximum assistance to SAR aircraft performing a SAR mission.

**REFERENCE-**
*FAAO JO 7110.65, Para 10-1-3, Providing Assistance.*

**d.** Expedite the movement of presidential aircraft and entourage and any rescue support aircraft as well as related control messages when traffic conditions and communications facilities permit.

**NOTE-**

*As used herein the terms presidential aircraft and entourage include aircraft and entourage o. the President, Vice President, or other public figures when designated by the White House.*

**REFERENCE-**
FAAO JO 7110.65, Para 2-4-20, Aircraft Identification.
FAAO JO 7110.65, Para 4-3-2, Departure Clearances.
FAAO JO 7210.3, Para 5-1-1, Advance Coordination.

**e.** Provide special handling, as required to expedite Flight Check aircraft.

**NOTE-**
*It is recognized that unexpected wind conditions, weather, or heavy traffic flows may affec controller's ability to provide priority or special handling at the specific time requested.*

**REFERENCE-**
FAAO JO 7110.65, Para 9-1-3, Flight Check Aircraft.

**f.** Expedite movement of NIGHT WATCH aircraft when NAOC (pronounced NA-YOCK) is indicated in the remarks section of the flight plan or in air/ground communications.

**NOTE-**
*The term "NAOC" will not be a part of the call sign but may be used when the aircraft is airborne to indicate a request for special handling.*

**REFERENCE-**
FAAO JO 7610.4, Para 12-1-1, Applications.

**g.** Provide expeditious handling for any civil or military aircraft using the code name "FLYNET."

**REFERENCE-**
FAAO JO 7110.65, Para 9-2-6, FLYNET.
FAAO JO 7610.4, Para 12-4-1, "FLYNET" Flights, Nuclear Emergency Teams.

**h.** Provide expeditious handling of aircraft using the code name "Garden Plot" only when CARF notifies you that such priority is authorized. Refer any questions regarding flight procedures to CARF for resolution.

**NOTE-**
*Garden Plot flights require priority movement and are coordinated by the military with CARF State authority will contact the Regional Administrator to arrange for priority of National Guard troop movements within a particular state.*

**i.** Provide special handling for USAF aircraft engaged in aerial sampling missions using the code name "SAMP."

**REFERENCE-**
FAAO JO 7110.65, Para 9-2-16, SAMP.
FAAO JO 7210.3, Para 5-3-4, Atmosphere Sampling For Nuclear Contamination.
FAAO JO 7610.4, Para 12-4-3, Atmospheric Sampling For Nuclear Contamination.

**j.** Provide maximum assistance to expedite the movement of interceptor aircraft on active air defense missions until the unknown aircraft is identified.

**k.** Expedite movement of Special Air Mission aircraft when SCOOT is indicated in the remarks section of the flight plan or in air/ground communications.

**NOTE-**
*The term "SCOOT" will not be part of the call sign but may be used when the aircraft is airborne to indicate a request for special handling.*

**REFERENCE-**
FAAO JO 7110.65, Para 9-2-11, Law Enforcement Operations by Civil and Military Organizations.
FAAO JO 7610.4, Para 12-7-1, Applications.

**l.** When requested, provide priority handling to TEAL and NOAA mission aircraft.

**NOTE-**
*Priority handling may be requested by the pilot, or via telephone from CARCAH or the 53rd Weather Reconnaissance Squadron (53WRS) operations center personnel, or in the remarks section of the flight plan.*

**REFERENCE-**
FAAO JO 7110.65, Para 9-2-18, Weather Reconnaissance Flights.

**m.** IFR aircraft shall have priority over SVFR aircraft.

**REFERENCE-**
FAAO JO 7110.65, Chapter 7, Section 5, Special VFR (SVFR).

**n.** Providing priority and special handling to expedite the movement of OPEN SKIES observation and demonstration flights.

**NOTE-**
*An OPEN SKIES aircraft has priority over all "regular" air traffic. "Regular" is defined as all aircraft traffic other than:*
*1. Emergencies.*
*2. Aircraft directly involved in presidential movement.*
*3. Forces or activities in actual combat.*
*4. Lifeguard, MED EVAC, AIR EVAC and active SAR missions.*

**REFERENCE-**
FAAO JO 7110.65, Para 9-2-21, OPEN SKIES Treaty Aircraft.
FAAO JO 7210.3, Para 5-3-7, OPEN SKIES Treaty Aircraft.
Treaty on OPEN SKIES, Treaty Document, 102-37.

**o.** Aircraft operating under the North American Route Program (NRP) and in airspace identified in the High Altitude Redesign (HAR) program, are not subject to route limiting restrictions (e.g. published preferred IFR routes, letter of agreement requirements, standard operating

procedures).

**REFERENCE-**
*FAAO JO 7110.65, Para 2-3-2, En Route Data Entries.*
*FAAO JO 7110.65, Para 2-2-15, North American Route Program (NRP) Information.*
*FAAO JO 7110.65, Para 4-2-5, Route or Altitude Amendments.*
*FAAO JO 7210.3, Chapter 17, Section 16, North American Route Program.*

**p.** If able, provide priority handling to diverted flights. Priority handling may be requested via use of "DVRSN" in the remarks section of the flight plan or by the flight being placed on the Diversion Recovery Tool (DRT).

**REFERENCE-**
*FAAO JO 7210.3, Para 17-4-5, Diversion Recovery.*

## 2-1-5. EXPEDITIOUS COMPLIANCE

**a.** Use the word "immediately" only when expeditious compliance is required to avoid an imminent situation.

**b.** Use the word "expedite" only when prompt compliance is required to avoid the development of an imminent situation. If an "expedite" climb or descent clearance is issued by ATC, and subsequently the altitude to maintain is changed or restated without an expedite instruction, the expedite instruction is canceled.

**c.** In either case, if time permits, include the reason for this action.

## 2-1-6. SAFETY ALERT

Issue a safety alert to an aircraft if you are aware the aircraft is in a position/altitude which, in your judgment, places it in unsafe proximity to terrain, obstructions, or other aircraft. Once the pilot informs you action is being taken to resolve the situation, you may discontinue the issuance of further alerts. Do not assume that because someone else has responsibility for the aircraft that the unsafe situation has been observed and the safety alert issued; inform the appropriate controller.

**NOTE-**
*1. The issuance of a safety alert is a first priority (see para 2-1-2, Duty Priority) once the controller observes and recognizes a situation of unsafe aircraft proximity to terrain, obstacles, or other aircraft. Conditions, such as workload, traffic volume, the quality/limitations of the radar system, and the available lead time to react are factors in determining whether it is reasonable for the controller to observe and recognize such situations. While a controller cannot see immediately the development of every situation where a safety alert must be issued, the controller must remain vigilant for such situations and issue a safety alert when the situation is recognized.*

**2.** *Recognition of situations of unsafe proximity may result from MSAW/E-MSAW/LAAS automatic altitude readouts, Conflict/Mode C Intruder Alert, observations on a PAR scope, or pilot reports.*

**3.** *Once the alert is issued, it is solely the pilot's prerogative to determine what course of action, if any, will be taken.*

**a.** Terrain/Obstruction Alert. Immediately issue/initiate an alert to an aircraft if you are aware the aircraft is at an altitude which, in your judgment, places it in unsafe proximity to terrain/obstructions. Issue the alert as follows:

**PHRASEOLOGY-**
*LOW ALTITUDE ALERT (call sign),*

*CHECK YOUR ALTITUDE IMMEDIATELY.*

*THE (as appropriate) MEA/MVA/MOCA/MIA IN YOUR AREA IS (altitude),*

*or if an aircraft is past the final approach fix (nonprecision approach),*

*or the outer marker,*

*or the fix used in lieu of the outer marker (precision approach),*

*and, if known, issue*

*THE (as appropriate) MDA/DH IS (altitude).*

**b.** Aircraft Conflict/Mode C Intruder Alert. Immediately issue/initiate an alert to an aircraft if you are aware of another aircraft at an altitude which you believe places them in unsafe proximity. If feasible, offer the pilot an alternate course of action.

**c.** When an alternate course of action is given, end the transmission with the word "immediately."

**PHRASEOLOGY-**
*TRAFFIC ALERT (call sign) (position of aircraft) ADVISE YOU TURN LEFT/RIGHT (heading),*

*and/or*

*CLIMB/DESCEND (specific altitude if appropriate) IMMEDIATELY.*

REFERENCE-
*FAAO JO 7110.65, Para 5-14-1, Conflict Alert (CA) and Mode C Intruder (MCI) Alert.*
*FAAO JO 7110.65, Para 5-14-2, En Route Minimum Safe Altitude Warning (E-MSAW).*
*FAAO JO 7110.65, Para 5-15-6, CA/MCI.*
*FAAO JO 7110.65, Para 5-2-23, Altitude Filters.*

## 2-1-7. INFLIGHT EQUIPMENT MALFUNCTIONS

**a.** When a pilot reports an inflight equipment malfunction, determine the nature and extent of any special handling desired.

**NOTE-**
*Inflight equipment malfunctions include partial or complete failure of equipment, which may affect either safety, separation standards, and/or the ability of the flight to proceed under IFR or in Reduced Vertical Separation Minimum (RVSM) airspace, in the ATC system. Controllers may expect reports from pilots regarding VOR, TACAN, ADF, GPS, RVSM capability, or low frequency navigation receivers, impairment of air-ground communications capability, or other equipment deemed appropriate by the pilot (e.g., airborne weather radar). Pilots should communicate the nature and extent of any assistance desired from ATC.*

**b.** Provide the maximum assistance possible consistent with equipment, workload, and any special handling requested.

**c.** Relay to other controllers or facilities who will subsequently handle the aircraft, all pertinent details concerning the aircraft and any special handling required or being provided.

## 2-1-8. MINIMUM FUEL

If an aircraft declares a state of "minimum fuel," inform any facility to whom control jurisdiction is transferred of the minimum fuel problem and be alert for any occurrence which might delay the aircraft en route.

**NOTE-**
*Use of the term "minimum fuel" indicates recognition by a pilot that his/her fuel supply has reached a state where, upon reaching destination, he/she cannot accept any undue delay. This is not an emergency situation but merely an advisory that indicates an emergency situation is possible should any undue delay occur. A minimum fuel advisory does not imply a need for traffic priority. Common sense and good judgment will determine the extent of assistance to be given in minimum fuel situations. If, at any time, the remaining usable fuel supply suggests the need for traffic priority to ensure a safe landing, the pilot should declare an emergency and report fuel remaining in minutes.*

## 2-1-9. REPORTING ESSENTIAL FLIGHT INFORMATION

Report as soon as possible to the appropriate AFSS/FSS, airport manager's office, ARTCC approach control facility, operations office, or military operations office any information concerning components of the NAS or any flight conditions which may have an adverse effect on air safety.

**NOTE-**

*AFSSs/FSSs are responsible for classifying and disseminating Notices to Airmen.*

**REFERENCE-**
FAAO JO 7110.65, Para 3-3-3, Timely Information.
FAAO JO 7110.65, Para 5-1-6, Service Limitations.
FAAO JO 7210.3, Para 3-1-2, Periodic Maintenance.
USN, See OPNAVINST 3721.30.

## 2-1-10. NAVAID MALFUNCTIONS

**a.** When an aircraft reports a ground-based NAVAID malfunction, take the following actions:

**1.** Request a report from a second aircraft.

**2.** If the second aircraft reports normal operations, continue use and inform the first aircraft. Record the incident on FAA Form 7230-4 or appropriate military form.

**3.** If the second aircraft confirms the malfunction or in the absence of a second aircraft report, activate the standby equipment or request the monitor facility to activate.

**4.** If normal operation is reported after the standby equipment is activated, continue use, record the incident on FAA Form 7230-4 or appropriate military form, and notify technical operations personnel (the Systems Engineer of the ARTCC when an en route aid is involved).

**5.** If continued malfunction is reported after the standby equipment is activated or the standby equipment cannot be activated, inform technical operations personnel and request advice on whether or not the aid should be shut down. In the absence of a second aircraft report, advise the technical operations personnel of the time of the initial aircraft report and the estimated time a second aircraft report could be obtained.

**b.** When an aircraft reports a GPS anomaly, request the following information and/or take the following actions:

**1.** Record the following minimum information:

**(a)** Aircraft call sign and type.

**(b)** Location.

**(c)** Altitude.

**(d)** Date/time of occurrence.

**2.** Record the incident on FAA Form 7230-4 or appropriate military form.

**3.** Broadcast the anomaly report to other aircraft as necessary.

**PHRASEOLOGY-**
*ATTENTION ALL AIRCRAFT, GPS REPORTED UNRELIABLE IN VICINITY/AREA (position).*

**EXAMPLE-**
*"Attention all aircraft, GPS reported unreliable in the area 30 miles south of Waco VOR."*

**c.** When an aircraft reports a Wide Area Augmentation System (WAAS) anomaly, request the following information and/or take the following actions:

**1.** Determine if the pilot has lost all WAAS service.

**PHRASEOLOGY-**
*ARE YOU RECEIVING ANY WAAS SERVICE?*

**2.** If the pilot reports receipt of any WAAS service, acknowledge the report and continue normal operations.

**3.** If the pilot reports loss of all WAAS service, report as a GPS anomaly using procedures in subpara 2-1-10b.

### 2-1-11. USE OF MARSA

**a.** MARSA may only be applied to military operations specified in a letter of agreement or other appropriate FAA or military document.

**NOTE-**
*Application of MARSA is a military command prerogative. It will not be invoked indiscriminately by individual units or pilots. It will be used only for IFR operations requiring its use. Commands authorizing MARSA will ensure that its implementation and terms of use are documented and coordinated with the control agency having jurisdiction over the area in which the operations are conducted. Terms of use will assign responsibility and provide for separation among participating aircraft.*

**b.** ATC facilities do not invoke or deny MARSA. Their sole responsibility concerning the use of MARSA is to provide separation between military aircraft engaged in MARSA operations and other nonparticipating IFR aircraft.

**c.** DOD shall ensure that military pilots requesting special-use airspace/ATCAAs have coordinated with the scheduling agency, have obtained approval for entry, and are familiar with the appropriate MARSA procedures. ATC is not responsible for determining which military aircraft are authorized to enter special-use airspace/ATCAAs.

REFERENCE-
FAAO JO 7110.65, Para 9-2-12, Military Aerial Refueling.

## 2-1-12. MILITARY PROCEDURES

Military procedures in the form of additions, modifications, and exceptions to the basic FAA procedure are prescribed herein when a common procedure has not been attained or to fulfill a specific requirement. They shall be applied by:

**a.** ATC facilities operated by that military service.

**EXAMPLE-**
**1.** *An Air Force facility providing service for an Air Force base would apply USAF procedures to all traffic regardless of class.*

**2.** *A Navy facility providing service for a Naval Air Station would apply USN procedures to all traffic regardless of class.*

**b.** ATC facilities, regardless of their parent organization (FAA, USAF, USN, USA), supporting a designated military airport exclusively. This designation determines which military procedures are to be applied.

**EXAMPLE-**
**1.** *An FAA facility supports a USAF base exclusively; USAF procedures are applied to all traffic at that base.*

**2.** *An FAA facility provides approach control service for a Naval Air Station as well as supporting a civil airport; basic FAA procedures are applied at both locations by the FAA facility.*

**3.** *A USAF facility supports a USAF base and provides approach control service to a satellite civilian airport; USAF procedures are applied at both locations by the USAF facility.*

REFERENCE-
FAAO JO 7110.65, Para 1-2-5, Annotations.

**c.** Other ATC facilities when specified in a letter of agreement.

**EXAMPLE-**
*A USAF unit is using a civil airport supported by an FAA facility- USAF procedures will be applied as specified in a letter of agreement between the unit and the FAA facility to the aircraft of the USAF unit. Basic FAA procedures will be applied to all other aircraft.*

## 2-1-13. FORMATION FLIGHTS

**a.** Control formation flights as a single aircraft. When individual control is requested, issue advisory information which will assist the pilots in attaining separation. When pilot reports indicate separation has been established, issue control instructions as required.

**NOTE-**
*1. Separation responsibility between aircraft within the formation during transition to individual control rests with the pilots concerned until standard separation has been attained.*

*2. Formation join-up and breakaway will be conducted in VFR weather conditions unless prior authorization has been obtained from ATC or individual control has been approved.*

**REFERENCE-**
FAAO JO 7110.65, Para 5-5-8, Additional Separation for Formation Flights.
P/CG Term- Formation Flight.

**b.** Military and civil formation flights in RVSM airspace.

**1.** Utilize RVSM separation standards for a formation flight, which consists of all RVSM approved aircraft.

**2.** Utilize non-RVSM separation standards for a formation flight above FL 290, which does not consist of all RVSM approved aircraft.

**3.** If aircraft are requesting to form a formation flight to FL 290 or above, the controller who issues the clearance creating the formation flight is responsible for ensuring that the proper equipment suffix is entered for the lead aircraft.

**4.** If the flight departs as a formation, and is requesting FL 290 or above, the first center sector shall ensure that the proper equipment suffix is entered.

**5.** If the formation flight is below FL 290 and later requests FL 290 or above, the controller receiving the RVSM altitude request shall ensure the proper equipment suffix is entered.

**6.** Upon break-up of the formation flight, the controller initiating the break-up shall ensure that all aircraft or flights are assigned their proper equipment suffix.

## 2-1-14. COORDINATE USE OF AIRSPACE

**a.** Ensure that the necessary coordination has been accomplished before you allow an aircraft under your control to enter another controller's area of jurisdiction.

**b.** Before you issue control instructions directly or relay through another source to an aircraft which is within another controller's area of jurisdiction that will change that aircraft's heading route, speed, or altitude, ensure that coordination has been accomplished with each of the

controllers listed below whose area of jurisdiction is affected by those instructions unless otherwise specified by a letter of agreement or a facility directive:

**1.** The controller within whose area of jurisdiction the control instructions will be issued.

**2.** The controller receiving the transfer of control.

**3.** Any intervening controller(s) through whose area of jurisdiction the aircraft will pass.

**c.** If you issue control instructions to an aircraft through a source other than another controller (e.g., ARINC, AFSS/FSS, another pilot) ensure that the necessary coordination has been accomplished with any controllers listed in subparas b1, 2, and 3, whose area of jurisdiction is affected by those instructions unless otherwise specified by a letter of agreement or a facility directive.

*REFERENCE-*
*FAAO JO 7110.65, Para 2-1-15, Control Transfer.*
*FAAO JO 7110.65, Para 5-5-10, Adjacent Airspace.*
*FAAO JO 7110.65, Para 5-4-5, Transferring Controller Handoff.*
*FAAO JO 7110.65, Para 5-4-6, Receiving Controller Handoff.*

## 2-1-15. CONTROL TRANSFER

**a.** Transfer control of an aircraft in accordance with the following conditions:

**1.** At a prescribed or coordinated location, time, fix, or altitude; or,

**2.** At the time a radar handoff and frequency change to the receiving controller have been completed and when authorized by a facility directive or letter of agreement which specifies the type and extent of control that is transferred.

*REFERENCE-*
*FAAO JO 7110.65, Para 2-1-14, Coordinate Use of Airspace.*
*FAAO JO 7110.65, Para 5-4-5, Transferring Controller Handoff.*
*FAAO JO 7110.65, Para 5-4-6, Receiving Controller Handoff.*

**b.** Transfer control of an aircraft only after eliminating any potential conflict with other aircraft for which you have separation responsibility.

**c.** Assume control of an aircraft only after it is in your area of jurisdiction unless specifically coordinated or as specified by letter of agreement or a facility directive.

## 2-1-16. SURFACE AREAS

**a.** Coordinate with the appropriate nonapproach control tower on an individual aircraft basis

before issuing a clearance which would require flight within a surface area for which the tower has responsibility unless otherwise specified in a letter of agreement.

REFERENCE-
FAAO JO 7210.3, Para 4-3-1, Letters of Agreement.
14 CFR Section 91.127, Operating on or in the Vicinity of an Airport in Class E Airspace.

P/CG Term- Surface Area.

**b.** Coordinate with the appropriate control tower for transit authorization when you are providing radar traffic advisory service to an aircraft that will enter another facility's airspace.

**NOTE-**
*The pilot is not expected to obtain his/her own authorization through each area when in contact with a radar facility.*

**c.** Transfer communications to the appropriate facility, if required, prior to operation within a surface area for which the tower has responsibility.

REFERENCE-
FAAO JO 7110.65, Para 2-1-17, Radio Communications Transfer.
FAAO JO 7110.65, Para 3-1-11, Surface Area Restrictions.
FAAO JO 7110.65, Para 7-6-1, Application.
14 CFR Section 91.129, Operations in Class D Airspace.

## 2-1-17. RADIO COMMUNICATIONS TRANSFER

**a.** Transfer radio communications before an aircraft enters the receiving controller's area of jurisdiction unless otherwise coordinated or specified by a letter of agreement or a facility directive.

**b.** Transfer radio communications by specifying the following:

**NOTE-**
*Radio communications transfer procedures may be specified by a letter of agreement or contained in the route description of an MTR as published in the DOD Planning AP/1B (AP/3).*

**1.** The facility name or location name and terminal function to be contacted. *TERMINAL: Omit the location name when transferring communications to another controller within your facility except when instructing the aircraft to change frequency for final approach guidance include the name of the facility.*

**2.** Frequency to use except the following may be omitted:

**(a)** FSS frequency.

**(b)** Departure frequency if previously given or published on a SID chart for the procedure issued.

**(c)** *TERMINAL:*

**(1)** Ground or local control frequency if in your opinion the pilot knows which frequency is in use.

**(2)** The numbers preceding the decimal point if the ground control frequency is in the 121 MHz bandwidth.

**EXAMPLE-**
*"Contact Tower."*
*"Contact Ground."*
*"Contact Ground Point Seven."*
*"Contact Ground, One Two Zero Point Eight."*
*"Contact Huntington Radio."*
*"Contact Departure."*
*"Contact Los Angeles Center, One Two Three Point Four."*

**3.** Time, fix, altitude, or specifically when to contact a facility. You may omit this when compliance is expected upon receipt.

**NOTE-**
*AIM, para 5-3-1, ARTCC Communications, informs pilots that they are expected to maintain a listening watch on the transferring controller's frequency until the time, fix, or altitude specified.*

**PHRASEOLOGY-**
*CONTACT (facility name or location name and terminal function), (frequency).*

*If required,*

*AT (time, fix, or altitude).*

**c.** In situations where an operational advantage will be gained, and following coordination with the receiving controller, you may instruct aircraft on the ground to monitor the receiving controller's frequency.

**EXAMPLE-**
*"Monitor Tower."*
*"Monitor Ground."*
*"Monitor Ground Point Seven."*
*"Monitor Ground, One Two Zero Point Eight."*

**d.** In situations where a sector has multiple frequencies or when sectors are combined using multiple frequencies and the aircraft will remain under your jurisdiction, transfer radio communication by specifying the following:

**PHRASEOLOGY-**

*(Identification) CHANGE TO MY FREQUENCY (state frequency).*

**EXAMPLE-**
*"United two twenty-two change to my frequency one two three point four."*

**REFERENCE-**
AIM, Para 4-2-3, Contact Procedures.

**e.** Avoid issuing a frequency change to helicopters known to be single-piloted during air-taxiing, hovering, or low-level flight. Whenever possible, relay necessary control instructions until the pilot is able to change frequency.

**NOTE-**
*Most light helicopters are flown by one pilot and require the constant use of both hands and feet to maintain control. Although Flight Control Friction Devices assist the pilot, changing frequency near the ground could result in inadvertent ground contact and consequent loss of control. Pilots are expected to advise ATC of their single-pilot status if unable to comply with a frequency change.*

**REFERENCE-**
AIM, Para 4-3-14, Communications.

**f.** In situations where the controller does not want the pilot to change frequency but the pilot is expecting or may want a frequency change, use the following phraseology.

**PHRASEOLOGY-**
*REMAIN THIS FREQUENCY.*

**REFERENCE-**
FAAO JO 7110.65, Para 4-7-1, Clearance Information.
FAAO JO 7110.65, Para 5-12-9, Communication Transfer.

## 2-1-18. OPERATIONAL REQUESTS

Respond to a request from another controller, a pilot or vehicle operator by one of the following verbal means:

**a.** Restate the request in complete or abbreviated terms followed by the word "APPROVED." The phraseology "APPROVED AS REQUESTED" may be substituted in lieu of a lengthy readback.

**PHRASEOLOGY-**
*(Requested operation) APPROVED.*

*or*

Chapter 2. General Control

*APPROVED AS REQUESTED.*

**b.** State restrictions followed by the word "APPROVED."

**PHRASEOLOGY-**
*(Restriction and/or additional instructions, requested operation) APPROVED.*

**c.** State the word "UNABLE" and, time permitting, a reason.

**PHRASEOLOGY-**
*UNABLE (requested operation).*

*and when necessary,*

*(reason and/or additional instructions.)*

**d.** State the words "STAND BY."

**NOTE-**
*"STAND BY" is not an approval or denial. The controller acknowledges the request and will respond at a later time.*

**REFERENCE-**
FAAO JO 7110.65, Para 2-1-21, Traffic Advisories.
FAAO JO 7110.65, Para 4-2-5, Route or Altitude Amendments.
FAAO JO 7110.65, Para 7-9-3, Methods.


## 2-1-19. WAKE TURBULENCE

**a.** Apply wake turbulence procedures to aircraft operating behind heavy jets/B757s and, where indicated, to small aircraft behind large aircraft.

**NOTE-**
*Para 5-5-4, Minima, specifies increased radar separation for small type aircraft landing behind large, heavy, or B757 aircraft because of the possible effects of wake turbulence.*

**b.** The separation minima shall continue to touchdown for all IFR aircraft not making a visual approach or maintaining visual separation.

**REFERENCE-**
FAAO JO 7110.65, Para 5-9-5, Approach Separation Responsibility.


## 2-1-20. WAKE TURBULENCE CAUTIONARY ADVISORIES

**a.** Issue wake turbulence cautionary advisories and the position, altitude if known, and direction

of flight of the heavy jet or B757 to:

REFERENCE-
AC 90-23, Aircraft Wake Turbulence, Pilot Responsibility, Para 12.

**1.** *TERMINAL.* VFR aircraft not being radar vectored but are behind heavy jets or B757s.

**2.** IFR aircraft that accept a visual approach or visual separation.

REFERENCE-
FAAO JO 7110.65, Para 7-4-1, Visual Approach.

**3.** *TERMINAL.* VFR arriving aircraft that have previously been radar vectored and the vectoring has been discontinued.

**b.** Issue cautionary information to any aircraft if in your opinion, wake turbulence may have an adverse effect on it. When traffic is known to be a heavy aircraft, include the word *heavy* in the description.

**NOTE-**
*Wake turbulence may be encountered by aircraft in flight as well as when operating on the airport movement area. Because wake turbulence is unpredictable, the controller is no responsible for anticipating its existence or effect. Although not mandatory during ground operations, controllers may use the words jet blast, propwash, or rotorwash, in lieu of wake turbulence, when issuing a caution advisory.*

REFERENCE-
AC 90-23, Aircraft Wake Turbulence.
P/CG Term- Aircraft Classes.
P/CG Term- Wake Turbulence.

**PHRASEOLOGY-**
CAUTION WAKE TURBULENCE (traffic information).

REFERENCE-
FAAO JO 7110.65, Para 7-2-1, Visual Separation.

## 2-1-21. TRAFFIC ADVISORIES

Unless an aircraft is operating within Class A airspace or omission is requested by the pilot issue traffic advisories to all aircraft (IFR or VFR) on your frequency when, in your judgment their proximity may diminish to less than the applicable separation minima. Where no separation minima applies, such as for VFR aircraft outside of Class B/Class C airspace, or a TRSA, issue traffic advisories to those aircraft on your frequency when in your judgment their proximity warrants it. Provide this service as follows:

**a.** To radar identified aircraft:

**1.** Azimuth from aircraft in terms of the 12-hour clock, or

**2.** When rapidly maneuvering aircraft prevent accurate issuance of traffic as in 1 above, specify the direction from an aircraft's position in terms of the eight cardinal compass points (N, NE, E SE, S, SW, W, and NW). This method shall be terminated at the pilot's request.

**3.** Distance from aircraft in miles.

**4.** Direction in which traffic is proceeding and/or relative movement of traffic.

**NOTE-**
*Relative movement includes closing, converging, parallel same direction, opposite direction diverging, overtaking, crossing left to right, crossing right to left.*

**5.** If known, type of aircraft and altitude.

**REFERENCE-**
*FAAO JO 7110.65, Para 2-4-21, Description of Aircraft Types.*

**PHRASEOLOGY-**
*TRAFFIC, (number) O'CLOCK,*

*or when appropriate,*

*(direction) (number) MILES, (direction)-BOUND and/or (relative movement),*

*and if known,*

*(type of aircraft and altitude).*

*or*

*When appropriate,*

*(type of aircraft and relative position), (number of feet) FEET ABOVE/BELOW YOU.*

*If altitude is unknown,*

*ALTITUDE UNKNOWN.*

**EXAMPLE-**
*"Traffic, eleven o'clock, one zero miles, southbound, converging, Boeing Seven Twenty Seven one seven thousand."*
*"Traffic, twelve o'clock, one five miles, opposite direction, altitude unknown."*
*"Traffic, ten o'clock, one two miles, southeast bound, one thousand feet below you."*

**6.** When requested by the pilot, issue radar vectors to assist in avoiding the traffic, provided the aircraft to be vectored is within your area of jurisdiction or coordination has been effected with the sector/facility in whose area the aircraft is operating.

**7.** If unable to provide vector service, inform the pilot.

*REFERENCE-*
*FAAO JO 7110.65, Para 2-1-18, Operational Requests.*

**8.** Inform the pilot of the following when traffic you have issued is not reported in sight:

**(a)** The traffic is no factor.

**(b)** The traffic is no longer depicted on radar.

*PHRASEOLOGY-*
*TRAFFIC NO FACTOR/NO LONGER OBSERVED,*

*or*

*(number) O'CLOCK TRAFFIC NO FACTOR/NO
LONGER OBSERVED,*

*or*

*(direction) TRAFFIC NO FACTOR/NO LONGER
OBSERVED.*

**b.** To aircraft that are not radar identified:

**1.** Distance and direction from fix.

**2.** Direction in which traffic is proceeding.

**3.** If known, type of aircraft and altitude.

**4.** ETA over the fix the aircraft is approaching, if appropriate.

*PHRASEOLOGY-*
*TRAFFIC, (number) MILES/MINUTES (direction) OF (airport or fix), (direction)-BOUND,*

*and if known,*

*(type of aircraft and altitude),*

*ESTIMATED (fix) (time),*

*or*

*TRAFFIC, NUMEROUS AIRCRAFT VICINITY (location).*

*If altitude is unknown,*

*ALTITUDE UNKNOWN.*

**EXAMPLE-**
*"Traffic, one zero miles east of Forsythe V-O-R, Southbound, M-D Eighty, descending to one six thousand."*
*"Traffic, reported one zero miles west of Downey V-O-R, northbound, Apache, altitude unknown, estimated Joliet V-O-R one three one five."*
*"Traffic, eight minutes west of Chicago Heights V-O-R, westbound, Mooney, eight thousand, estimated Joliet V-O-R two zero three five."*
*"Traffic, numerous aircraft, vicinity of Delia airport."*

**c.** For aircraft displaying Mode C, not radar identified, issue indicated altitude.

**EXAMPLE-**
*"Traffic, one o'clock, six miles, eastbound, altitude indicates six thousand five hundred."*

**REFERENCE-**
*FAAO JO 7110.65, Para 3-1-6, Traffic Information.*
*FAAO JO 7110.65, Para 7-2-1, Visual Separation.*
*FAAO JO 7110.65, Para 7-6-10, VFR Departure Information.*

## 2-1-22. BIRD ACTIVITY INFORMATION

**a.** Issue advisory information on pilot-reported, tower-observed, or radar-observed and pilot-verified bird activity. Include position, species or size of birds, if known, course of flight, and altitude. Do this for at least 15 minutes after receipt of such information from pilots or from adjacent facilities unless visual observation or subsequent reports reveal the activity is no longer a factor.

**EXAMPLE-**
*"Flock of geese, one o'clock, seven miles, northbound, last reported at four thousand."*
*"Flock of small birds, southbound along Mohawk River, last reported at three thousand."*
*"Numerous flocks of ducks, vicinity Lake Winnebago, altitude unknown."*

**b.** Relay bird activity information to adjacent facilities and to AFSSs/FSSs whenever it appears it will become a factor in their areas.

## 2-1-23. TRANSFER OF POSITION RESPONSIBILITY

The transfer of position responsibility shall be accomplished in accordance with the "Standard Operating Practice (SOP) for the Transfer of Position Responsibility," and appropriate facility directives each time operational responsibility for a position is transferred from one specialist to another.

## 2-1-24. WHEELS DOWN CHECK

*USA/USAF/USN*

Remind aircraft to check wheels down on each approach unless the pilot has previously reported wheels down for that approach.

**NOTE-**
*The intent is solely to remind the pilot to lower the wheels, not to place responsibility on the controller.*

**a.** Tower shall issue the wheels down check at an appropriate place in the pattern.

**PHRASEOLOGY-**
*CHECK WHEELS DOWN.*

**b.** Approach/arrival control, GCA shall issue the wheels down check as follows:

**1.** To aircraft conducting ASR, PAR, or radar monitored approaches, before the aircraft starts descent on final approach.

**2.** To aircraft conducting instrument approaches and remaining on the radar facility's frequency before the aircraft passes the outer marker/final approach fix.

**PHRASEOLOGY-**
*WHEELS SHOULD BE DOWN.*

## 2-1-25. SUPERVISORY NOTIFICATION

Ensure supervisor/controller-in-charge (CIC) is aware of conditions which impact sector/position operations including, but not limited to, the following:

**a.** Weather.

**b.** Equipment status.

**c.** Potential sector overload.

**d.** Emergency situations.

**e.** Special flights/operations.

## 2-1-26. PILOT DEVIATION NOTIFICATION

When it appears that the actions of a pilot constitute a pilot deviation, notify the pilot, workload permitting.

*PHRASEOLOGY-*
*(Identification) POSSIBLE PILOT DEVIATION ADVISE YOU CONTACT (facility) AT (telephone number).*

*REFERENCE-*
*FAAO 8020.11, Aircraft Accident and Incident Notification, Investigation, and Reporting, Para 84, Pilot Deviations.*

## 2-1-27. TCAS RESOLUTION ADVISORIES

**a.** When an aircraft under your control jurisdiction informs you that it is responding to a TCAS Resolution Advisory (RA), do not issue control instructions that are contrary to the RA procedure that a crew member has advised you that they are executing. Provide safety alerts regarding terrain or obstructions and traffic advisories for the aircraft responding to the RA and all other aircraft under your control jurisdiction, as appropriate.

**b.** Unless advised by other aircraft that they are also responding to a TCAS RA, do not assume that other aircraft in the proximity of the responding aircraft are involved in the RA maneuver or are aware of the responding aircraft's intended maneuvers. Continue to provide control instructions, safety alerts, and traffic advisories as appropriate to such aircraft.

**c.** Once the responding aircraft has begun a maneuver in response to an RA, the controller is not responsible for providing standard separation between the aircraft that is responding to an RA and any other aircraft, airspace, terrain or obstructions. Responsibility for standard separation resumes when one of the following conditions are met:

**1.** The responding aircraft has returned to its assigned altitude, or

**2.** A crew member informs you that the TCAS maneuver is completed and you observe that standard separation has been reestablished, or

**3.** The responding aircraft has executed an alternate clearance and you observe that standard separation has been reestablished.

*NOTE-*

**1.** AC 120-55A, Air Carrier Operational Approval and Use of TCAS II, suggests pilots use the following phraseology to notify controllers during TCAS events. When a TCAS RA may affect an ATC clearance, inform ATC when beginning the maneuver, or as soon as workload permits.

**EXAMPLE-**
**1.** "New York Center, United 321, TCAS climb."

**NOTE-**
**2.** When the RA has been resolved, the flight crew should advise ATC they are returning to their previously assigned clearance or subsequent amended clearance.

**EXAMPLE-**
**2.** "New York Center, United 321, clear of conflict, returning to assigned altitude."

## 2-1-28. RVSM OPERATIONS

Controller responsibilities shall include but not be limited to the following:

**a.** Non-RVSM aircraft operating in RVSM airspace.

**1.** Ensure non-RVSM aircraft are not permitted in RVSM airspace unless they meet the criteria of excepted aircraft and are previously approved by the operations supervisor/CIC. The following aircraft are excepted: DOD, DOD certified aircraft operated by NASA (T38, F15, F18 WB57, S3, and U2 aircraft only), Lifeguard, manufacturer aircraft being flown for development/certification, and Foreign State aircraft. These exceptions are accommodated on a workload or traffic-permitting basis.

**NOTE-**
The operations supervisor/CIC is responsible for system acceptance of a non-RVSM aircraft beyond the initial sector-to-sector coordination following the pilot request to access the airspace. Operations supervisor/CIC responsibilities are defined in FAAO JO 7210.3, Chapter 6, Section 9, Reduced Vertical Separation Minimum (RVSM).

**2.** Ensure sector-to-sector coordination for all non-RVSM aircraft operations within RVSM airspace.

**3.** Inform the operational supervisor/CIC when a non-RVSM exception flight is denied clearance into RVSM airspace or is removed from RVSM airspace.

**b.** Non-RVSM aircraft transitioning RVSM airspace.

Ensure that operations supervisors/CICs are made aware when non-RVSM aircraft are transitioning through RVSM airspace.

**c.** Apply appropriate separation standards and remove any aircraft from RVSM airspace that advises it is unable RVSM due to equipment while en route.

**d.** Use "negative RVSM" in all verbal ground-to-ground communications involving non-RVSM aircraft while cleared to operate within RVSM airspace.

*EXAMPLE-*
*"Point out Baxter21 climbing to FL 360, negative RVSM."*

**e.** For the following situations, use the associated phraseology:

**1.** To deny clearance into RVSM airspace.

*PHRASEOLOGY-*
*"UNABLE CLEARANCE INTO RVSM AIRSPACE."*

**2.** To request a pilot to report when able to resume RVSM.

*PHRASEOLOGY-*
*"REPORT ABLE TO RESUME RVSM."*

**f.** In the event of a change to an aircraft's navigational capability amend the equipment suffix in order to properly identify non-RVSM aircraft on the controller display.

## 2-1-29. TERRAIN AWARENESS WARNING SYSTEM (TAWS) ALERTS

**a.** When an aircraft under your control jurisdiction informs you that it is responding to a TAWS (or other on-board low altitude) alert, do not issue control instructions that are contrary to the TAWS procedure that a crew member has advised you that they are executing. Provide safety alerts regarding terrain or obstructions and traffic advisories for the aircraft responding to the TAWS alert and all other aircraft under your control jurisdiction, as appropriate.

**b.** Once the responding aircraft has begun a maneuver in response to TAWS alert, the controller is not responsible for providing standard separation between the aircraft that is responding to a TAWS alert and any other aircraft, airspace, terrain or obstructions. Responsibility for standard separation resumes when one of the following conditions are met:

**1.** The responding aircraft has returned to its assigned altitude, or

**2.** A crew member informs you that the TAWS maneuver is completed and you observe that standard separation has been reestablished, or

**3.** The responding aircraft has executed an alternate clearance and you observe that standard

Chapter 2. General Control

separation has been reestablished.

| Return to Air Traffic Publications Library | Return to Order Home Page | Return to Table of Contents |
|---|---|---|



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
Air Traffic Organization Policy

**ORDER**
**JO 7110.65T**
Effective Date:
February 11, 2010

Subject:  **Air Traffic Control**

# Chapter 3. Airport Traffic Control- Terminal

## Section 1. General

### 3-1-1. PROVIDE SERVICE

Provide airport traffic control service based only upon observed or known traffic and airport conditions.

**NOTE-**
*When operating in accordance with CFRs, it is the responsibility of the pilot to avoid collision with other aircraft. However, due to the limited space around terminal locations, traffic information can aid pilots in avoiding collision between aircraft operating within Class B, Class C, or Class D surface areas and the terminal radar service areas, and transiting aircraft operating in proximity to terminal locations.*

### 3-1-2. PREVENTIVE CONTROL

Provide preventive control service only to aircraft operating in accordance with a letter of agreement. When providing this service, issue advice or instructions only if a situation develops which requires corrective action.

**NOTE-**
*Preventive control differs from other airport traffic control in that repetitious, routine approval of pilot action is eliminated. Controllers intervene only when they observe a traffic conflict developing.*

### 3-1-3. USE OF ACTIVE RUNWAYS

The local controller has primary responsibility for operations conducted on the active runway

and must control the use of those runways. Positive coordination and control is required as follows:

**NOTE-**
*Exceptions may be authorized only as provided in para 1-1-10, Constraints Governing Supplements and Procedural Deviations, and FAAO JO 7210.3, Facility Operation and Administration, para 10-1-7, Use of Active Runways, where justified by extraordinary circumstances at specific locations.*

**REFERENCE-**
FAAO JO 7110.65, Para 1-1-10, Constraints Governing Supplements and Procedural Deviations.
FAAO JO 7210.3, Para 10-1-7, Use of Active Runways.

**a.** Ground control must obtain approval from local control before authorizing an aircraft or a vehicle to cross or use any portion of an active runway. The coordination shall include the point/intersection at the runway where the operation will occur.

**PHRASEOLOGY-**
*CROSS (runway) AT (point/intersection).*

**b.** When the local controller authorizes another controller to cross an active runway, the local controller shall verbally specify the runway to be crossed and the point/intersection at the runway where the operation will occur preceded by the word "cross."

**PHRASEOLOGY-**
*CROSS (runway) AT (point/intersection).*

**c.** The ground controller shall advise the local controller when the coordinated runway operation is complete. This may be accomplished verbally or through visual aids as specified by a facility directive.

**d.** *USA/USAF/USN NOT APPLICABLE.* Authorization for aircraft/vehicles to taxi/proceed on or along an active runway, for purposes other than crossing, shall be provided via direct communications on the appropriate local control frequency. This authorization may be provided on the ground control frequency after coordination with local control is completed for those operations specifically described in a facility directive.

**NOTE-**
*The USA, USAF, and USN establish local operating procedures in accordance with, respectively, USA, USAF, and USN directives.*

**e.** The local controller shall coordinate with the ground controller before using a runway not previously designated as active.

**REFERENCE-**
FAAO JO 7110.65, Para 3-1-4, Coordination Between Local and Ground Controllers.

## 3-1-4. COORDINATION BETWEEN LOCAL AND GROUND CONTROLLERS

Local and ground controllers shall exchange information as necessary for the safe and efficient use of airport runways and movement areas. This may be accomplished via verbal means flight progress strips, other written information, or automation displays. As a minimum, provide aircraft identification and applicable runway/intersection/taxiway information as follows:

**a.** Ground control shall notify local control when a departing aircraft has been taxied to a runway other than one previously designated as active.

REFERENCE-
FAAO JO 7110.65, Para 3-1-3, Use of Active Runways.
FAAO JO 7210.3, Para 10-1-6, Selecting Active Runways.

**b.** Ground control must notify local control of any aircraft taxied to an intersection for takeoff This notification may be accomplished by verbal means or by flight progress strips.

REFERENCE-
FAAO JO 7110.65, Para 3-9-7, Wake Turbulence Separation for Intersection Departures.

**c.** When the runways in use for landing/departing aircraft are not visible from the tower or the aircraft using them are not visible on radar, advise the local/ground controller of the aircraft's location before releasing the aircraft to the other controller.

## 3-1-5. VEHICLES/EQUIPMENT/PERSONNEL ON RUNWAYS

**a.** Ensure that the runway to be used is free of all known ground vehicles, equipment, and personnel before a departing aircraft starts takeoff or a landing aircraft crosses the runway threshold.

**b.** Vehicles, equipment, and personnel in direct communications with the control tower may be authorized to operate up to the edge of an active runway surface when necessary. Provide advisories as specified in para 3-1-6, Traffic Information, and para 3-7-5, Precision Approach Critical Area, as appropriate.

*PHRASEOLOGY-*
*PROCEED AS REQUESTED; AND IF NECESSARY, (additional instructions or information).*

*NOTE-*
*Establishing hold lines/signs is the responsibility of the airport manager. Standards for surface measurements, markings, and signs are contained in the following Advisory Circulars; AC 150/5300-13, Airport Design; AC 150/5340-1, Standards for Airport Markings, and AC 150/5340-18, Standards for Airport Sign Systems. The operator is responsible to properly position the aircraft, vehicle, or equipment at the appropriate hold line/sign or designated point The requirements in para 3-1-12, Visually Scanning Runways, remain valid as appropriate.*

REFERENCE-
FAAO JO 7110.65, Para 3-7-4, Runway Proximity.
FAAO JO 7110.65, Para 3-8-2, Touch-and-Go or Stop-and-Go or Low Approach.
FAAO JO 7110.65, Para 3-10-10, Altitude Restricted Low Approach.
AC 150/5300-13, Airport Design.
AC 150/5340-1G, Standards for Airport Markings.
14 CFR Section 91.129, Operations in Class D Airspace.
AIM, Para 2-2-3, Obstruction Lights.
P/CG Term- Runway in Use/Active Runway/Duty Runway.

## 3-1-6. TRAFFIC INFORMATION

**a.** Describe vehicles, equipment, or personnel on or near the movement area in a manner which will assist pilots in recognizing them.

**EXAMPLE-**
*"Mower left of runway two seven."*
*"Trucks crossing approach end of runway two five."*
*"Workman on taxiway Bravo."*
*"Aircraft left of runway one eight."*

**b.** Describe the relative position of traffic in an easy to understand manner, such as "to your right" or "ahead of you."

**EXAMPLE-**
*"Traffic, U.S. Air MD-Eighty on downwind leg to your left."*
*"King Air inbound from outer marker on straight-in approach to runway one seven."*

**c.** When using a CTRD, you may issue traffic advisories using the standard radar phraseology prescribed in para 2-1-21, Traffic Advisories.

REFERENCE-
FAAO JO 7110.65, Para 3-10-10, Altitude Restricted Low Approach.

## 3-1-7. POSITION DETERMINATION

Determine the position of an aircraft before issuing taxi instructions or takeoff clearance.

**NOTE-**
*The aircraft's position may be determined visually by the controller, by pilots, or through the use of the ASDE.*

## 3-1-8. LOW LEVEL WIND SHEAR/MICROBURST ADVISORIES

**a.** When low level wind shear/microburst is reported by pilots, Integrated Terminal Weather System (ITWS), or detected on wind shear detection systems such as LLWAS NE++, LLWAS-

RS, WSP, or TDWR, controllers shall issue the alert to all arriving and departing aircraft Continue the alert to aircraft until it is broadcast on the ATIS and pilots indicate they have received the appropriate ATIS code. A statement shall be included on the ATIS for 20 minutes following the last report or indication of the wind shear/microburst.

**REFERENCE-**
FAAO JO 7110.65, Para 2-6-3, PIREP Information.
FAAO JO 7110.65, Para 2-9-3, Content.
FAAO JO 7110.65, Para 3-10-1, Landing Information.

**PHRASEOLOGY-**
*LOW LEVEL WIND SHEAR (or MICROBURST, as appropriate) ADVISORIES IN EFFECT.*

**b.** At facilities without ATIS, ensure that wind shear/microburst information is broadcast to al arriving and departing aircraft for 20 minutes following the last report or indication of winc shear/microburst.

**1.** At locations equipped with LLWAS, the local controller shall provide wind information as follows:

**NOTE-**
*The LLWAS is designed to detect low level wind shear conditions around the periphery of an airport. It does not detect wind shear beyond that limitation.*

**REFERENCE-**
FAAO JO 7210.3, Para 10-3-3, Low Level Wind Shear/Microburst Detection Systems.

**(a)** If an alert is received, issue the airport wind and the displayed field boundary wind.

**PHRASEOLOGY-**
*WIND SHEAR ALERT. AIRPORT WIND (direction) AT (velocity). (Location of sensor, BOUNDARY WIND (direction) AT (velocity).*

**(b)** If multiple alerts are received, issue an advisory that there are wind shear alerts ir two/several/all quadrants. After issuing the advisory, issue the airport wind in accordance with para 3-9-1, Departure Information, followed by the field boundary wind most appropriate to the aircraft operation.

**PHRASEOLOGY-**
*WIND SHEAR ALERTS TWO/SEVERAL/ALL QUADRANTS. AIRPORT WIND (direction) AT (velocity). (Location of sensor) BOUNDARY WIND (direction) AT (velocity).*

**(c)** If requested by the pilot, issue specific field boundary wind information even though the LLWAS may not be in alert status.

**NOTE-**
*The requirements for issuance of wind information remain valid as appropriate under this*

*paragraph, para 3-9-1, Departure Information and para 3-10-1, Landing Information.*

**2.** Wind shear detection systems, including TDWR, WSP, LLWAS NE++ and LLWAS-RS provide the capability of displaying microburst alerts, wind shear alerts, and wind information oriented to the threshold or departure end of a runway. When detected, the associated ribbon display allows the controller to read the displayed alert without any need for interpretation.

**(a)** If a wind shear or microburst alert is received for the runway in use, issue the alert information for that runway to arriving and departing aircraft as it is displayed on the ribbon display.

**PHRASEOLOGY-**
*(Runway) (arrival/departure) WIND SHEAR/MICROBURST ALERT, (windspeed) KNOT GAIN/LOSS, (location).*

**EXAMPLE-**
*17A MBA 40K - 3MF*

**PHRASEOLOGY-**
*RUNWAY 17 ARRIVAL MICROBURST ALERT 40 KNOT LOSS 3 MILE FINAL.*

**EXAMPLE-**
*17D WSA 25K+ 2MD*

**PHRASEOLOGY-**
*RUNWAY 17 DEPARTURE WIND SHEAR ALERT 25 KNOT GAIN 2 MILE DEPARTURE.*

**(b)** If requested by the pilot or deemed appropriate by the controller, issue the displayed wind information oriented to the threshold or departure end of the runway.

**PHRASEOLOGY-**
*(Runway) DEPARTURE/THRESHOLD WIND (direction) AT (velocity).*

**(c)** LLWAS NE++ or LLWAS-RS may detect a possible wind shear/microburst at the edge of the system but may be unable to distinguish between a wind shear and a microburst. A wind shear alert message will be displayed, followed by an asterisk, advising of a possible wind shear outside of the system network.

**NOTE-**
*LLWAS NE++ when associated with TDWR can detect wind shear/microbursts outside the network if the TDWR fails.*

**PHRASEOLOGY-**
*(Appropriate wind or alert information) POSSIBLE WIND SHEAR OUTSIDE THE NETWORK.*

**(d)** If unstable conditions produce multiple alerts, issue an advisory of multiple wind

shear/microburst alerts followed by specific alert or wind information most appropriate to the aircraft operation.

**PHRASEOLOGY-**
*MULTIPLE WIND SHEAR/MICROBURST ALERTS (specific alert or wind information).*

**(e)** The LLWAS NE++ and LLWAS-RS are designed to operate with as many as 50 percent of the total sensors inoperative. When all three remote sensors designated for a specific runway arrival or departure wind display line are inoperative then the LLWAS NE++ and LLWAS-RS for that runway arrival/departure shall be considered out of service. When a specific runway arrival or departure wind display line is inoperative and wind shear/microburst activity is likely; (e.g. frontal activity, convective storms, PIREPs), a statement shall be included on the ATIS, "WIND SHEAR AND MICROBURST INFORMATION FOR RUNWAY (runway number) ARRIVAL/DEPARTURE NOT AVAILABLE."

**NOTE-**
*The geographic situation display (GSD) is a supervisory planning tool and is not intended to be a primary tool for microburst or wind shear.*

## 3-1-9. USE OF TOWER RADAR DISPLAYS

**a.** Uncertified tower display workstations shall be used only as an aid to assist controllers in visually locating aircraft or in determining their spatial relationship to known geographical points. Radar services and traffic advisories are not to be provided using uncertified tower display workstations. General information may be given in an easy to understand manner, such as "to your right" or "ahead of you."

**EXAMPLE-**
*"Follow the aircraft ahead of you passing the river at the stacks." "King Air passing left to right."*

**REFERENCE-**
*FAAO JO 7210.3, Para 10-5-3, Functional Use of Certified Tower Radar Displays.*

**b.** Local controllers may use certified tower radar displays for the following purposes:

**1.** To determine an aircraft's identification, exact location, or spatial relationship to other aircraft

**NOTE-**
*This authorization does not alter visual separation procedures. When employing visual separation, the provisions of para 7-2-1, Visual Separation, apply unless otherwise authorized by the Vice President of Terminal Service.*

**REFERENCE-**
*FAAO JO 7110.65, Para 5-3-2, Primary Radar Identification Methods.*
*FAAO JO 7110.65, Para 5-3-3, Beacon Identification Methods.*
*FAAO JO 7110.65, Para 5-3-4, Terminal Automation Systems Identification Methods.*

**2.** To provide aircraft with radar traffic advisories.

**3.** To provide a direction or suggested headings to VFR aircraft as a method for radar identification or as an advisory aid to navigation.

**PHRASEOLOGY-**
*(Identification), PROCEED (direction)-BOUND, (other instructions or information as necessary),*

*or*

*(identification), SUGGESTED HEADING (degrees), (other instructions as necessary).*

**NOTE-**
*It is important that the pilot be aware of the fact that the directions or headings being provided are suggestions or are advisory in nature. This is to keep the pilot from being inadvertently misled into assuming that radar vectors (and other associated radar services) are being provided when, in fact, they are not.*

**4.** To provide information and instructions to aircraft operating within the surface area for which the tower has responsibility.

**EXAMPLE-**
*"TURN BASE LEG NOW."*

**NOTE-**
*Unless otherwise authorized, tower radar displays are intended to be an aid to local controllers in meeting their responsibilities to the aircraft operating on the runways or within the surface area. They are not intended to provide radar benefits to pilots except for those accrued through a more efficient and effective local control position. In addition, local controllers at nonapproach control towers must devote the majority of their time to visually scanning the runways and local area; an assurance of continued positive radar identification could place distracting and operationally inefficient requirements upon the local controller. Therefore, since the requirements of para 5-3-1, Application, cannot be assured, the radar functions prescribed above are not considered to be radar services and pilots should not be advised of being in "radar contact."*

**c.** Additional functions may be performed provided the procedures have been reviewed and authorized by appropriate management levels.

**REFERENCE-**
*FAAO JO 7110.65, Para 5-5-4, Minima.*

## 3-1-10. OBSERVED ABNORMALITIES

When requested by a pilot or when you deem it necessary, inform an aircraft of any observed abnormal aircraft condition.

**PHRASEOLOGY-**
*(Item) APPEAR/S (observed condition).*

**EXAMPLE-**
*"Landing gear appears up."*
*"Landing gear appears down and in place."*
*"Rear baggage door appears open."*

## 3-1-11. SURFACE AREA RESTRICTIONS

**a.** If traffic conditions permit, approve a pilot's request to cross Class C or Class D surface areas or exceed the Class C or Class D airspace speed limit. Do not, however, approve a speed in excess of 250 knots (288 mph) unless the pilot informs you a higher minimum speed is required.

**NOTE-**
*14 CFR Section 91.117 permits speeds in excess of 250 knots (288 mph) when so required or recommended in the airplane flight manual or required by normal military operating procedures.*

**REFERENCE-**
*FAAO JO 7110.65, Para 2-1-16, Surface Areas.*

**b.** Do not approve a pilot's request or ask a pilot to conduct unusual maneuvers within surface areas of Class B, C, or D airspace if they are not essential to the performance of the flight.

*EXCEPTION.* A pilot's request to conduct aerobatic practice activities may be approved, when operating in accordance with a letter of agreement, and the activity will have no adverse effect on safety of the air traffic operation or result in a reduction of service to other users.

**REFERENCE-**
*FAAO JO 7210.3, Para 5-4-7, Aerobatic Practice Areas.*

**NOTE-**
*These unusual maneuvers include unnecessary low passes, unscheduled flybys, practice instrument approaches to altitudes below specified minima (unless a landing or touch-and-go is to be made), or any so-called "buzz jobs" wherein a flight is conducted at a low altitude and/or a high rate of speed for thrill purposes. Such maneuvers increase hazards to persons and property and contribute to noise complaints.*

## 3-1-12. VISUALLY SCANNING RUNWAYS

**a.** Local controllers shall visually scan runways to the maximum extent possible.

**b.** Ground control shall assist local control in visually scanning runways, especially when runways are in close proximity to other movement areas.

## 3-1-13. ESTABLISHING TWO-WAY COMMUNICATIONS

Pilots are required to establish two-way radio communications before entering the Class D airspace. If the controller responds to a radio call with, "(a/c call sign) standby," radio communications have been established and the pilot can enter the Class D airspace. If workload or traffic conditions prevent immediate provision of Class D services, inform the pilot to remain outside the Class D airspace until conditions permit the services to be provided.

### PHRASEOLOGY-
*(A/c call sign) REMAIN OUTSIDE DELTA AIRSPACE AND STANDBY.*

**REFERENCE-**
FAAO JO 7110.65, Para 7-2-1, Visual Separation.

## 3-1-14. GROUND OPERATIONS WHEN VOLCANIC ASH IS PRESENT

When volcanic ash is present on the airport surface, and to the extent possible:

**a.** Avoid requiring aircraft to come to a full stop while taxiing.

**b.** Provide for a rolling takeoff for all departures.

### NOTE-
*When aircraft begin a taxi or takeoff roll on ash contaminated surfaces, large amounts of volcanic ash will again become airborne. This newly airborne ash will significantly reduce visibility and will be ingested by the engines of following aircraft.*

**REFERENCE-**
AIM, Para 7-5-9, Flight Operations in Volcanic Ash.

| Return to Air Traffic Publications Library | Return to Order Home Page | Return to Table of Contents |



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
Air Traffic Organization Policy

ORDER
JO 7110.65T
Effective Date:
February 11, 2010

Subject:  **Air Traffic Control**

# Section 8. Spacing and Sequencing

### 3-8-1. SEQUENCE/SPACING APPLICATION

Establish the sequence of arriving and departing aircraft by requiring them to adjust flight or ground operation, as necessary, to achieve proper spacing.

***PHRASEOLOGY-***
*CLEARED FOR TAKEOFF.*

*CLEARED FOR TAKEOFF OR HOLD SHORT/HOLD IN POSITION/TAXI OFF THE RUNWAY (traffic).*

*EXTEND DOWNWIND.*

*MAKE SHORT APPROACH.*

*NUMBER (landing sequence number),*

*FOLLOW (description and location of traffic),*

*or if traffic is utilizing another runway,*

*TRAFFIC (description and location) LANDING RUNWAY (number of runway being used).*

*CIRCLE THE AIRPORT.*

*MAKE LEFT/RIGHT THREE-SIXTY/TWO SEVENTY.*

*GO AROUND (additional instructions as necessary).*

*CLEARED TO LAND.*

*CLEARED:*

*TOUCH-AND-GO,*

*or*

*STOP-AND-GO,*
*or*

*LOW APPROACH.*

*CLEARED FOR THE OPTION,*

*or*

*OPTION APPROVED,*

*or*

*UNABLE OPTION, (alternate instructions).*

*or*

*UNABLE (type of option), OTHER OPTIONS*
*APPROVED.*

**NOTE-**
**1.** *The "Cleared for the Option" procedure will permit an instructor pilot/flight examiner/pilot the option to make a touch-and-go, low approach, missed approach, stop-and-go, or full stop landing. This procedure will only be used at those locations with an operational control tower and will be subject to ATC approval.*

**2.** *For proper helicopter spacing, speed adjustments may be more practical than course changes.*

**3.** *Read back of hold short instructions apply when hold instructions are issued to a pilot in lieu of a takeoff clearance.*

**REFERENCE-**
*FAAO JO 7110.65, Para 3-7-2, Taxi and Ground Movement Operations.*

## 3-8-2. TOUCH-AND-GO OR STOP-AND-GO OR LOW APPROACH

Consider an aircraft cleared for touch-and-go, stop-and-go, or low approach as an arriving aircraft until it touches down (for touch-and-go), or makes a complete stop (for stop-and-go) or crosses the landing threshold (for low approach), and thereafter as a departing aircraft.

**REFERENCE-**
*FAAO JO 7110.65, Para 3-1-5, Vehicles/Equipment/Personnel on Runways.*
*FAAO JO 7110.65, Para 3-9-7, Wake Turbulence Separation for Intersection Departures.*

### 3-8-3. SIMULTANEOUS SAME DIRECTION OPERATION

Authorize simultaneous, same direction operations on parallel runways, on parallel landing strips, or on a runway and a parallel landing strip only when the following conditions are met:

**a.** Operations are conducted in VFR conditions unless visual separation is applied.

**b.** Two-way radio communication is maintained with the aircraft involved and pertinent traffic information is issued.

**c.** The distance between the runways or landing strips is in accordance with the minima in TBL 3-8-1 (use the greater minimum if two categories are involved).

*TBL 3-8-1*
### Same Direction Distance Minima

| Aircraft category | Minimum distance (feet) between parallel | |
|---|---|---|
| | Runway centerlines | Edges of adjacent strips or runway and strip |
| Lightweight, single-engine, propeller driven | 300 | 200 |
| Twin-engine, propeller driven | 500 | 400 |
| All others | 700 | 600 |

### 3-8-4. SIMULTANEOUS OPPOSITE DIRECTION OPERATION

Authorize simultaneous opposite direction operations on parallel runways, on parallel landing strips, or on a runway and a parallel landing strip only when the following conditions are met:

**a.** Operations are conducted in VFR conditions.

**b.** Two-way radio communication is maintained with the aircraft involved and pertinent traffic information is issued.

*PHRASEOLOGY-*
*TRAFFIC (description) ARRIVING/DEPARTING/LOW APPROACH, OPPOSITE DIRECTION ON PARALLEL RUNWAY/LANDING STRIP.*

**c.** The distance between the runways or landing strips is in accordance with the minima in TBL

3-8-2.

*TBL 3-8-2*
## Opposite Direction Distance Minima

| Type of Operation | Minimum distance (feet) between parallel | |
| --- | --- | --- |
| | Runway centerlines | Edges of adjacent strips or runway and strip |
| Between sunrise and sunset | 1,400 | 1,400 |
| Between sunset and sunrise | 2,800 | Not authorized |

| Return to Air Traffic Publications Library | Return to Order Home Page | Return to Table of Contents |